Judge Mills
delivered the opinion of the court.
The heirs of John M’Chord exhibited their bill in the court below, complaining that David Logan sold to their ancestor a tract of three hundred acres of land, and had stipulated, by a penal deed, to convey the same; that the consideration was entirely paid by their ancestor; that he had resided upon and long held possession of the land; and still Logan had refused to convey it, but bad contracted to convey to Talbot, and they file the contract as part of their bill, and pray a specific execution. In response to this bill, Logan admits the sale of the land; but denies the reception of the payment, and exhibits two notes of the same date, with the written contract shewn by the complainants. He admits the credits endorsed on these notes, but claims other demands against them. He avers that the ancestor of the complainants had abandoned the land, and that he and their ancestor had verbally rescinded the contract, and he had restored all payments. The complainants having alledged the insanity of their ancestor, he contests the allegation, and denies its correctness till after the time they rescinded the contract, as aforesaid. The court, on the hearing of the cause, decreed the specific execution of the contract unconditionally to reverse which decree this writ of error is prosecuted.
It certainly devolved on the complainants, when payment was denied, and written evidence of the debt exhibited, to establish the payment, before they could have a specific execution unconditionally decreed. The court will proceed to enquire how far they have succeeded in doing so. It seems evident, by the testimony of the witnesses, that the price of the land originally was l.60, and there is strong proof exhibited conducing to shew that l.20 was paid at the time of the contract; but when it is considered that the bonds exhibited by Logan are l.49 4s. to be paid on stipulated credits, it is evident that only l 10 16s. of this l.20 could have been appropriated to the land, and that the residue must have been applied to some other dealings between the parties, if it was paid at all. Logan admits, and the credits on the bond shew, a payment of l.16 15 8. The credits which Logan claims against this credit, cannot be allowed him, for he has failed to establish them. In *225 addition to this, Rebecca M’Chord, the widow of the decedent, and whose feelings must be presumed to be strongly enlisted in their favor, proves a note of l.17 or l.18 given or paid by the decedent to Logan on a certain Davis. She does not state that it was assigned, or that it was ever collected: Nor have the complainants shewn what has become of Davis, or that he ever paid it, or that Logan ever had the opportunity of collecting: And the witness, speaking of this note, says Logan told him something about it; but when interrogated, he cannot give any distinct idea what the information was that Logan gave him. As this note was not money, but only the evidence of debt, and particularly as it rests on the evidence of one witness against the denial of the answer, it seems to the court that it cannot be allowed as a credit. The rest of the payments proved by the widow corresponds with the credits in the bond. The only remaining evidence in the cause tending to prove a payment, is the deposition of Spotswood, who swears that he heard Logan confess that he had received l.58 10s. and some pence. Confessions are competent testimony, but frequently ought to be received with caution, because they may be partially remembered, are more easy to be procured by improper means and are frequently shielded from disproof. In this instance, although the witness can remember the pounds and shillings and almost the pence, he cannot, when interrogated, detail the other minuliæ attending the transaction. He assumes an air of sneering levity in response to important and proper questions, and betrays an air of triumph in baffling the scrutiny of enquiry. He details the place of the conversation, and the person with whom it was held, when that person, in his deposition, can remember no such meeting or conversation, which he believes he should have remembered, if it had taken place. For these reasons, the testimony of Spotswood, if it could be sufficient standing alone, must be discredited, and no other payments ought to be allowed but those expressly permitted.
A payment provided by a single witness, but denied by the answer, cannot be allowed by the court.
Confessions of a party are competent, but should be received with great caution.
The question then arises, can the complainants, under the circumstances of defalcation in this case, be allowed a specific execution of the contract conditionally decreed? It is certainly a general rule, that a complainant claiming a specific execution, ought to shew a performance or an offer of performance on his part, to forgoing reasons excusing his defalcation: or that the strict compliance on his part *226 has been waived by his adversary. In this case, however, there are circumstances tending to excuse. The complainants’ ancestor was allowed to hold a proportion of the land from 1786 till 1809. He was the relative and intimate acquiantance of the defendant Logan, under such circumstances a rigorous compliance would not, probably, be exacted. In 1797, the parties on the back of the contract entered into an agreement expressing that the title of the land was doubtful, and if it should be lost, it was mutually agreed that certain persons named in the agreement should settle the controversy between them, from which it is to be inferred, that if it was not lost, M’Chord should still have it. About, or shortly after this period, according to the proof in the cause, M’Chord became insane, from which he never recovered till his death, which took place in 1812, or shortly after. Such circumstances authorise, in the opinion of the court, a specific execution conditionally. Instead, therefore, of an unconditional decree, which has been rendered and which is deemed erroneous, the decree of the court ought to be, that if the complainants, within a reasonable period to be fixed by the court, shall pay or tender to the defendant, Logan, the sum of forty nine pounds four shillings, with legal interest thereon after the rate of five per centum per annum from the first day of April, one thousand seven hundred and eighty six, till paid, on nineteen pounds four shillings thereof; and a like interest on the remaining thirty pounds, from the first day of January, one thousand seven hundred and eighty seven, till paid, subject to credit on the first aforenamed sum of five pounds ten shillings and four pence, paid on the 21st June, 1786; of nineteen shillings and ten pence, paid 6th November, 1786; six pounds seven shillings and six pence, on the 11th June, 1787; five pounds, January the 4th, 1788; six shillings the 20th of June, 1788; and one pound twelve shillings, the 3d July, 1788—and shall make said payment or tender appear to the satisfaction of the court, and shall exhibit the metes and bounds of the land, whereby a conveyance can be made, then the court to direct said defendant, Logan, to convey by deed with general warranty the land in the bill claimed, and the defendant, Talbot, to surrender his claim thereto. But if the said complainants shall fail or refuse to comply with said conditions, then the bill of the complainants to be dismissed, leaving them to any remedy at law which they may have on the *227 contract of said Logan. The decree of the court below must, therefore, be reversed with a mandatory order annexed thereto, to enter a decree as herein directed.
A long delay of payment of the consideration of a contract if attended with paliatory circumstances, will not, per se, furnish grounds for refusing a specific execution.
Pope for plaintiff, Wickliffe for defendants.